Juan Manuel **CAMPOS**, Appellant

v.

The **STATE** of Texas, Appellee.

No. 14–07–00014–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 27, 2008.

Renato Santos, Jr., Houston, TX, for appellant.

Terri Tipton Holder, Houston, TX, for appellee.

Panel consists of Justices YATES, GUZMAN, and PRICE.*

## OPINION

LESLIE B. YATES, Justice.

Appellant Juan Manuel Campos appeals his conviction for aggravated assault. In three issues, appellant complains the trial court erred in making certain evidentiary rulings and in allowing the jury to make an affirmative finding that appellant used his feet as a deadly weapon. We affirm.

### I.  Background

Appellant and Hai Son Nguyen were inmates at the Clemens Unit of the Texas Department of Criminal Justice in Brazoria County, Texas. On May 22, 2000, a fight broke out after some inmates attacked Nguyen. Although the inmates' accounts of what happened differed at trial, four inmates testified that they saw appellant jumping on Nguyen's head after Nguyen had fallen to the floor. Nguyen suffered brain injuries as well as multiple stab wounds and died at a Galveston hospital several hours later. According to the medical examiner's trial testimony, Nguyen sustained fatal stab wounds, as well as a severe brain injury that may also have caused his death.

In his first two issues, appellant maintains the trial court violated his confronta-

* Senior Justice Frank C. Price sitting by assignment.

tion rights by allowing the medical examiner to testify regarding an autopsy report that he did not author and a DNA chemist to testify regarding a DNA analysis report that she did not author. In his third issue, appellant contends that because the indictment did not allege appellant used his feet as a deadly weapon, he was not given notice that the State would seek an affirmative finding to that effect, and thus the trial court erred in submitting that issue to the jury.

## II. Analysis

### A. Confrontation Clause

In his first issue, appellant complains that his inability to cross examine the medical examiner who prepared the autopsy report violated his Sixth Amendment right to confrontation. In his second issue, appellant claims his inability to cross examine the DNA chemist who performed the DNA analysis violated his confrontation rights. The State replies that appellant waived error with respect to these issues, and that even if appellant preserved error, the trial court did not err in admitting the testimony.

### 1. Preservation of Error

■ To preserve a complaint for appellate review, the complaining party must state the grounds for the desired ruling to the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX.R.APP. P. 33.1(a)(1)(A); *Reyna v. State,* 168 S.W.3d 173, 177 (Tex.Crim.App.2005). The trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX.R.APP. P. 33.1(a)(2).

The State argues that appellant waived error with respect to admission of underlying facts contained in the autopsy report and DNA analysis report because he failed either to raise an objection each time the inadmissible evidence was offered or obtain a running objection. *See Valle v. State,* 109 S.W.3d 500, 509 (Tex.Crim.App. 2003). The State offered testimony by medical examiner Dr. Stephen Pustilnic regarding Nguyen's injuries. Dr. Pustilnic based his testimony on the autopsy report prepared by his predecessor. The report itself was never admitted into evidence. Before Dr. Pustilnic began testifying to the injuries in the autopsy report, appellant objected that "[t]his witness has no personal knowledge." The trial court overruled this objection. After Dr. Pustilnic testified to the stab wounds documented in the autopsy report, appellant again objected: "Your Honor, at this time I'm going to object to any further line of this testimony as violated from our confrontation rights of the person who actually performed the procedures [sic]." The court overruled appellant's second objection.

The State later called Christy Smejkal, supervisor of the Texas Department of Safety DNA Crime Lab, to testify about facts contained in a DNA analysis report prepared by Kristi Wimsett, a subordinate who was out on maternity leave. At the beginning of Smejkal's testimony, appellant requested permission to take the witness on voir dire. After determining that Smejkal did not author the DNA report, appellant objected: "Your Honor, I'd object to this witness testifying about these results because she is not the one that performed the examination; and two, I would object because it violates my client's confrontation rights to allow—under the Constitutions to allow this evidence to be entered in this fashion." The trial court overruled appellant's objection.

■ Although the law in Texas generally requires a party to continue to object each time inadmissible evidence is offered, a continuing or running objection may also

suffice to preserve error. *Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Crim.App. 1991). A continuing objection preserves error when it is timely, provides the basis for the ruling, and states the ruling desired from the court. *Id.* at 859. Appellant was clearly objecting on confrontation grounds to the entire testimony by Dr. Pustilnic and Smejkal on facts contained in reports they did not author. Further, the objections were timely and stated the desired ruling from the trial court. We find appellant's objections to Dr. Pustilnic's and Smejkal's testimony sufficient to preserve error. *See Ford v. State,* 919 S.W.2d 107, 113–14 (Tex.Crim.App.1996) (holding that even though appellant failed to object each time objectionable evidence was offered, appellant preserved error by requesting that his objection extend to any witness who testified regarding the matter).

### 2. No Confrontation Clause Violation

■ The "testimonial statements" of witnesses absent from trial are admissible over a Sixth Amendment Confrontation Clause objection only when the declarant is unavailable and the defendant has had a prior opportunity to cross examine the declarant. *See Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Post-*Crawford,* the threshold question in any Confrontation Clause analysis is whether the statements at issue are testimonial or nontestimonial in nature. *Spencer v. State,* 162 S.W.3d 877, 879 (Tex. App.-Houston [14th Dist.] 2005, pet. ref'd). We review a constitutional legal ruling, such as whether a statement is testimonial, de novo. *Wall v. State,* 184 S.W.3d 730, 742 (Tex.Crim.App.2006). By contrast, we review a trial court's admission or exclusion of evidence for an abuse of discretion. *Torres v. State,* 71 S.W.3d 758, 760 (Tex. Crim.App.2002). A trial court does not abuse its discretion, and we will not reverse a trial court's ruling, unless the rul-

ing falls outside the zone of reasonable disagreement. *Id.* A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim. App.1990).

■ The United States Supreme Court did not explicitly define the term "testimonial" in *Crawford.* However, the Court did state that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354. In *Davis v. Washington,* the Court elaborated on the holding of *Crawford* and held that in the context of police interrogations, statements are nontestimonial when made under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Statements are testimonial when the circumstances objectively indicate that there is no such ongoing emergency and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Id.*

In determining whether records are testimonial under *Crawford,* Texas courts have distinguished various types of records containing subjective observations pertinent to the accused's guilt or innocence from those that merely relate objective or historical information. *See Russeau v. State,* 171 S.W.3d 871, 880–81 (Tex.Crim. App.2005); *Ford v. State,* 179 S.W.3d 203, 209 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd), *cert. denied,* —— U.S. ——, 127 S.Ct. 281, 166 L.Ed.2d 215 (2006). In *Russeau,* the Court of Criminal Appeals held that because the inmate discipline and incident reports contained written observations made by correctional officers, the

reports were testimonial within the meaning of *Crawford.* *See Russeau,* 171 S.W.3d at 880–81. In *Ford v. State,* we distinguished *Russeau* and held that because the inmate disciplinary records were sterile recitations of the appellant's offenses and the punishments he had received for those offenses, they were not testimonial. *See Ford,* 179 S.W.3d at 209.[1] We further clarified our holding in *Ford* in *Grant v. State,* explaining that whether a report was testimonial did not depend solely on the inclusion or omission of detailed and graphic personal observations, but rather on the extent to which the records are either sterile recitations of fact or a subjective narration of events related to the appellant's guilt or innocence. *See Grant v. State,* 218 S.W.3d 225, 230–31 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd).

■ In his first issue, appellant argues that the admission of Dr. Pustilnic's testimony to facts in the autopsy report violated his confrontation rights because the report was testimonial and appellant had no opportunity to cross examine the report's author. At least three Texas courts have determined that autopsy reports are nontestimonial in nature. *See Terrazas v. State,* No. 03–05–00344–CR, 2006 WL 2080381, at *5 (Tex.App.-Austin July 28, 2006, pet. ref'd) (mem. op., not designated for publication) (holding introduction of autopsy report did not violate Confrontation Clause, in part because report contained factual statements setting forth matters observed pursuant to duty imposed by law); *Mitchell v. State,* 191 S.W.3d 219, 221–22 (Tex.App.-San Antonio 2005, pet. ref'd) (holding autopsy report was nontestimonial because report did not fall within categories of testimonial evidence described in *Crawford* ); *Denoso v. State,* 156 S.W.3d 166, 182 (Tex.App.-Corpus Christi 2005, pet. ref'd) (same). Although this court has not addressed this issue directly, in *Grant* we acknowledged that if the testimonial nature of records turned on the presence of "detailed and graphic observations," then "autopsy reports would be considered testimonial, yet this is not the case." *See Grant,* 218 S.W.3d at 231 (citing *Mitchell,* 191 S.W.3d at 221–22 and *Denoso,* 156 S.W.3d at 182).

■ Based on the rationale in these cases, we conclude the autopsy report at issue contains a sterile recitation of facts and is nontestimonial within the meaning of *Crawford* and *Davis.*[2] *See Grant,* 218 S.W.3d at 231–32; *Ford,* 179 S.W.3d at

1. Texas courts have employed the "sterile recitation" analysis in *Ford* to determine whether other types of records are testimonial. *See Azeez v. State,* 203 S.W.3d 456, 466 (Tex.App.-Houston [14th Dist.] 2006) (holding that challenged records reflected same sterility as those in *Ford* ), *rev'd on other grounds,* 248 S.W.3d 182 (Tex.Crim.App., 2008); *Guel–Rivas v. State,* No. 03–06–00762–CR, 2007 WL 4208341, at *3 (Tex.App.-Austin, Nov. 30, 2007, pet.struck) (mem. op., not designated for publication) (finding statements in sexual assault report that complainant did not have any physical injuries were a "sterile recitation" of facts, and as such, nontestimonial and not subject to the Confrontation Clause); *see also In re J.R.L.G.,* No. 11–05–00002–CV, 2006 WL 1098944, at *2 (Tex.App.-Eastland Apr.27, 2006, no pet.) (mem. op., not designated for publication) (applying reasoning in

*Ford* to determine that positive laboratory results from appellant's urinalysis screening were nontestimonial).

2. Other jurisdictions addressing Confrontation Clause objections to the admission of autopsy reports where the report's author does not testify have similarly concluded the reports are nontestimonial, albeit through a variety of rationales. *See United States v. Feliz,* 467 F.3d 227, 237 (2d Cir.2006) (holding that because they were admissible as both business and public records, autopsy reports were nontestimonial and not subject to Confrontation Clause), *cert. denied,* —— U.S. ——, 127 S.Ct. 1323, 167 L.Ed.2d 132 (2007); *People v. Moore,* 378 Ill.App.3d 41, 316 Ill.Dec. 751, 880 N.E.2d 229, 235, 237 (Ill.App.Ct. 2007) (concluding that since autopsy reports should be treated as business records, admis-

209. The report provides objective facts regarding Nguyen's injuries and the cause of his death. The information is routine, descriptive, and nonanalytical; the report does not relate subjective narratives pertaining to appellant's guilt or innocence. *See Grant*, 218 S.W.3d at 231. Because the autopsy report is nontestimonial and because appellant had an opportunity to cross examine Dr. Pustilnic, we conclude that admitting Dr. Pustilnic's testimony to the information contained in the report did not violate appellant's right to confrontation. *See Pierce v. State*, 234 S.W.3d 265, 269 (Tex.App.-Waco 2007, pet. ref'd) (holding inability to confront and cross examine autopsy report author did not violate right to confrontation because appellant had opportunity to confront pathologist who testified regarding report); *see also Grant*, 218 S.W.3d at 231; *Mitchell*, 191 S.W.3d at 221–22; *Denoso*, 156 S.W.3d at 182. We overrule appellant's first issue.

In his second issue, appellant argues that the DNA report that was the basis of Smejkal's testimony was a testimonial statement because it was made under circumstances that would lead an objective witness to reasonably believe the statement would be used at a later trial. At trial, Smejkal testified that her subordinate took blood samples from appellant's and Nguyen's jumpsuits and created DNA profiles from each sample. Using transparency copies of the profiles produced by her predecessor, Smejkal compared the DNA profiles for the jury. These copies were admitted into evidence. Smejkal testified she agreed with the results the subordinate reached in conducting the analysis and that "Nguyen [could not] be excluded as a contributor" to the blood stain found on the leg of appellant's jumpsuit.

■■■ Appellant's second issue—whether a DNA report is testimonial under *Crawford*—presents a matter of first impression for this court; appellant does not refer us to any Texas cases addressing this issue. To our knowledge, only one Texas court has addressed a Confrontation Clause objection to the admission of a DNA report.[3]

sion of autopsy report and testimony by medical examiner who did not author report did not implicate *Crawford* ); *State v. Beaner*, 974 So.2d 667, 685–86 (La.Ct.App.2007) (holding autopsy report was nontestimonial in nature and therefore admission of report without maker's testimony did not trigger *Crawford* mandate for cross examination); *State v. Craig*, 110 Ohio St.3d 306, 853 N.E.2d 621, 639 (2006) (agreeing with majority view that because autopsy reports are nontestimonial business records, their admission does not violate defendant's confrontation rights), *cert. denied*, —— U.S. ——, 127 S.Ct. 1374, 167 L.Ed.2d 164 (2007); *State v. Cutro*, 365 S.C. 366, 618 S.E.2d 890, 896 (2005) (concluding autopsy reports are similar to public records, not testimonial, and may be admitted without violating confrontation rights). *But see Smith v. State*, 898 So.2d 907, 916–17 (Ala.Crim. App.2004) (concluding admission of autopsy report without author's testimony was error because it enabled prosecution to prove an essential element of the crime without providing defendant an opportunity to cross examine report's author); *State v. Davidson*, 242 S.W.3d 409, 417 (Mo.Ct.App.2007) (holding that because autopsy report was prepared for litigation, it was testimonial and admission without author's testimony violated defendant's confrontation rights).

3. In *Acevedo v. State*, the San Antonio Court of Appeals held that because a fingerprint report was prepared for the purpose of establishing or proving past events potentially relevant to a later criminal prosecution, the report was testimonial. *Acevedo v. State*, 255 S.W.3d 162, 172 (Tex.App.-San Antonio, 2008, pet. filed). However, the opinion contains very little analysis; after quoting the "primary purpose" language from *Davis*, the court concluded the fingerprint report was testimonial because "it potentially provided factual evidence to support [Acevedo's] conviction." *Id.* at 172–173. We disagree that whether a report potentially provides factual evidence to support a conviction is the sole inquiry. If so, very few, if any, scientific reports would be non-testimonial. As dis-

*See Johnson v. State*, No. 05–05–00848–CR, 2006 WL 1738288, at *3 (Tex.App.-Dallas June 27, 2006, pet. ref'd) (not designated for publication). In *Johnson*, the Dallas Court of Appeals faced a situation almost identical to the instant case. *See id.* The *Johnson* court concluded that admission of a forensic biology report containing DNA profiles, through testimony by a medical examiner who was not the preparer of the report, did not violate the Confrontation Clause. *Id.* at *3–4. The court reasoned that because the report contained information collected during the investigation of a crime scene, set forth matters observed pursuant to a duty imposed by law, and did not accuse the appellant of any wrongdoing, the report was not testimonial within the meaning of *Crawford. Id.* at *3.

Following *Davis*, other jurisdictions dealing specifically with the admission of DNA reports where the report's author does not testify have concluded that the reports are not testimonial within the meaning of *Crawford* and *Davis.*[4] We find the rationale applied in two of these cases, *People v. Geier* and *People v. Rawlins*, instructive. *See People v. Geier*, 41 Cal.4th 555, 61 Cal.Rptr.3d 580, 161 P.3d 104, 140 (2007); *People v. Rawlins*, 10 N.Y.3d 136, 158, 855 N.Y.S.2d 20, 35, 884 N.E.2d 1019, 1034 (N.Y., 2008). Both *Geier* and *Rawlins* interpreted *Davis* as requiring courts to focus on the circumstances under which the allegedly testimonial statement was generated. *See Geier*, 61 Cal.Rptr.3d 580, 161 P.3d at 140 ("*Davis* ... requires us to consider the circumstances under which the statement was made."); *Rawlins*, 10 N.Y.3d 136, 154, 855 N.Y.S.2d 20, 32, 884 N.E.2d 1019, 1031 ("The force of *Davis* is that context matters...."). In *Geier*, the defendant objected on confrontation grounds to admission of a DNA report, through testimony by the prosecution's DNA expert, because the technician who actually conducted the analysis did not testify. *Geier*, 61 Cal.Rptr.3d 580, 161 P.3d at 133. The *Geier* court observed that (1) the report was generated pursuant to a standardized, scientific protocol, (2) the analysis was performed as part of the technician's job and not in order to incriminate the defendant, (3) the report recounted the procedures used to analyze the DNA samples, (4) the DNA analysis was not accusatory

___

cussed further below, we believe the better reasoned approach, and one that is consistent with the directives of *Davis*, is to look at the circumstances under which the statement, or the report, was made.

**4.** *See also United States v. Washington*, 498 F.3d 225, 232 (4th Cir.2007) (holding drug test results obtained from blood analysis were not testimonial under *Crawford* and *Davis* because "statements" in report did not establish or prove past events); *State v. O'Maley*, 156 N.H. 125, 932 A.2d 1, 14 (2007) (concluding blood sample collection form and results of blood tests were neutral and not testimonial under *Davis* ); *State v. Crager*, 116 Ohio St.3d 369, 879 N.E.2d 745, 757 (2007) (holding DNA reports contained raw data, did not "bear witness" against defendant, and as such were nontestimonial); *cf. State v. Lewis*, 235 S.W.3d 136, 151 (concluding expert's

testimony to results in DNA report he did not author was admissible because expert did not communicate any out of court statements made by author). *But see Thomas v. United States*, 914 A.2d 1, 12 (D.C.2006) (concluding report analyzing substance as cocaine constituted "core" testimonial statement under *Davis* ), *cert. denied,* — U.S. —, 128 S.Ct. 241, 169 L.Ed.2d 160 (2007); *State v. March*, 216 S.W.3d 663, 666–67(Mo.) (concluding laboratory report prepared for purpose of prosecuting defendant was testimonial under "primary purpose" test of *Davis* ), *cert. dismissed,* — U.S. —, 128 S.Ct. 1441, 169 L.Ed.2d 256 (2007); *State v. Kent*, 391 N.J.Super. 352, 918 A.2d 626, 640 (2007) (applying *Crawford* and *Davis* to conclude defendant was constitutionally entitled to cross examine declarants who prepared blood certificate and laboratory reports).

because the results had the power to exonerate as well as convict, and (5) the accusatory opinion that the defendant's DNA matched a sample taken from the victim was reached and conveyed by the testifying DNA expert and not the nontestifying technician who authored the report. *Geier,* 61 Cal.Rptr.3d 580, 161 P.3d at 140. *Rawlins* also concerned admission of a DNA report through testimony by a witness other than the report's author. *Rawlins,* 10 N.Y.3d 136, 144, 855 N.Y.S.2d 20, 25, 884 N.E.2d 1019, 1024. The *Rawlins* court applied a similar analysis in reaching the same conclusion as in *Geier,* but further reasoned that because "[n]either the prosecution nor law enforcement could have influenced the outcome [of the DNA report]," factors such as whether the laboratory was performing work for law enforcement or whether the technicians knew the results could later be used at trial were inconsequential. *Id.* at 144, 855 N.Y.S.2d 20, 884 N.E.2d 1019. Thus both *Geier* and *Rawlins* concluded that given the circumstances under which the DNA reports were generated, they did not fall within the scope of testimonial statements described in *Crawford* and *Davis. Geier,* 61 Cal.Rptr.3d 580, 161 P.3d at 140; *Rawlins,* 10 N.Y.3d 136, 158, 855 N.Y.S.2d 20, 35, 884 N.E.2d 1019, 1034.

We agree with the approach of *Geier* and *Rawlins* and the analysis formulated by the Dallas Court of Appeals in *Johnson.* Smejkal testified in detail as to the standard operating procedures the laboratory follows when performing DNA testing. The DNA report consisted of raw data—DNA profiles obtained from blood found on appellant's and Nguyen's jumpsuits. By following established protocols, the DNA profiles were generated as part of a routine process meant to ensure accurate analysis. Because the report provided factual evidence which had the potential to support appellant's conviction or exonerate him, it was not accusatory. The DNA report was thus neutral: the DNA profiles shed no light on appellant's guilt absent an expert opinion as to what those profiles revealed. It was left to Smejkal to draw from this evidence the inference that the victim's DNA matched DNA found on appellant's jumpsuit. Smejkal testified that she agreed with the results the technician reached in performing her analysis and that Nguyen could not be excluded as a contributor to the blood stain found on appellant's jumpsuit.[5] Appellant had ample opportunity to cross examine Smejkal regarding the inferences and conclusions she drew from the DNA profiles. We conclude the report did not testify or bear witness against appellant within the meaning of *Crawford* and *Davis. See Davis,* 547 U.S. at 823–24, 126 S.Ct. 2266. Accordingly, admission of the report and Smejkal's testimony did not violate appellant's confrontation rights. *See Geier,* 61 Cal.Rptr.3d 580, 161 P.3d at 140; *Rawlins,* 10 N.Y.3d 136, 158, 855 N.Y.S.2d 20, 35, 884 N.E.2d 1019, 1034; *Johnson,* 2006 WL 1738288, at *3.

Because we conclude the DNA report was nontestimonial and because appellant had an opportunity to cross examine Smejkal regarding her opinions about the report, we find no Confrontation Clause violation. Accordingly, we hold the trial court

---

5. In making this statement regarding Nguyen, Smejkal read from a document prepared by Wimsett, the subordinate technician who actually performed the DNA analysis. Apparently, Wimsett documented her conclusion that Nguyen could not be excluded as a source of the blood on appellant's jumpsuit. However, this written portion of the report was not admitted into evidence, and although Smejkal read from Wimsett's report in testifying, Smejkal also stated unequivocally her own conclusion that Nguyen was a likely source of the blood on appellant's jumpsuit.

did not err in admitting Smejkal's testimony and we overrule appellant's second issue.

## B. Deadly Weapon Finding

In his third issue, appellant claims that because the indictment did not allege that he used his feet as a deadly weapon, appellant received no notice that the State would seek an affirmative finding to that effect and consequently, the trial court erred in submitting the issue to the jury. This argument ignores Texas case law to the contrary. A defendant is entitled to written notice that the State will seek an affirmative finding that a deadly weapon was used during commission of the charged crime, but such notice need not be contained in the indictment under which the defendant is ultimately tried. *Ex parte Minott,* 972 S.W.2d 760, 761 (Tex. Crim.App.1998). A defendant is simply entitled to written notice in some form that the use of a deadly weapon will be a fact issue at trial. *Id.* The State provided proper written notice to appellant in its Notice of Deadly Weapon, filed two weeks prior to trial, that it intended to seek an affirmative finding that appellant used his feet as a deadly weapon. We overrule appellant's third issue.

We affirm the trial court's judgment.