**Affirmed and Opinion filed December 19, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00615-CR

**THEADRIC LEE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Cause No. 1334842**

## O P I N I O N

In a single issue, appellant Theadric Lee challenges his conviction of felony murder. He argues that the State violated his rights under the Confrontation Clauses of the United States and Texas Constitutions by, among other things, introducing an autopsy report without providing an opportunity to cross-examine the medical examiner who prepared it. *See* U.S. Const. amend. VI; Tex. Const. art.

I § 10.[1] We conclude that the State did violate appellant's rights—it now concedes as much—but the violation was harmless beyond a reasonable doubt. We therefore affirm.

## BACKGROUND

Complainant Juan Rodriguez died from gunshot wounds he received while confronting armed men who appeared to be robbing the home of his neighbor, Phillip Norwood. Appellant was tried for Rodriguez's death in 2012 with a jury charge that authorized conviction for either capital murder or felony murder, and that included instructions on finding appellant responsible for the criminal conduct of others. The jury ultimately convicted Lee of felony murder based on his role in the robbery of Norwood's home.

Appellant had participated in planning the robbery earlier that day. He and his friend, Willard Singleterry—whom appellant had invited along to "watch his back"—met Larry Wyatt and Jesse Butler at Butler's home. Appellant brought along a Bushmaster AR-15, which he had just bought, because "they didn't have enough guns with them already." The four men discussed their plan for the day. They expected to find twenty kilograms of cocaine, 250 pounds of marijuana, and $150,000 in cash that they would split among themselves. The men left Butler's home together in Wyatt's truck, picking up a fifth man on their way to Norwood's neighborhood.

Appellant armed himself with the AR-15, which he carried throughout the intrusion into Norwood's home, and kicked in Norwood's door according to plan.

---

[1] Because appellant has not provided any argument or authority that Texas's Constitution provides different or greater protections than its federal counterpart, we analyze his issue only under the United States Constitution. *See* Tex. R. App. P. 38.1; *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005); *Santacruz v. State*, 237 S.W.3d 822, 827 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

In total, the group—less Butler who waited in Wyatt's truck—carried the AR-15, two pistols, a shotgun, and a taser. They proceeded to search Norwood's home and question its occupants at gunpoint. Unable to find the quantities of drugs and cash they had expected, they contented themselves with taking television sets, a plastic tub full of electronics, and anything else of value they could find.

Some of the men were loading the items into the bed of Wyatt's truck when Rodriguez approached them from across the street. Rodriguez told the men to stop, or freeze, and informed them that he had a gun. Rodriguez and the robbers then exchanged a volley of bullets, at least some of which sounded like they were from a semiautomatic weapon or machine gun. Afterwards, appellant, Singleterry, and Wyatt jumped back in the truck and Butler drove them away from the scene. Rodriguez died en route to the hospital from gunshot wounds he received during the exchange.

At appellant's trial, even though appellant was not disputing the cause of Rodriguez's death, the State introduced the report from Rodriguez's autopsy and the accompanying autopsy photographs. Dr. Luisa Florez had prepared the report in the presence of an investigator from the Harris County Sheriff's office.

Since preparing the report, Dr. Florez had been indicted for allegedly making false statements under oath, a first-degree felony. The jury was not made aware of the indictment, however, because the State chose to have another medical examiner, Dr. Robert Milton, relay the findings of Dr. Florez's report.

Appellant objected to Dr. Milton's testimony, claiming that its admission would violate the Confrontation Clauses of the United States and Texas Constitutions because Dr. Milton did not perform the autopsy. The trial court overruled the objection but granted appellant's request for a running objection on Confrontation Clause grounds "to all of [Dr. Milton's] testimony." Dr. Milton

3

based his testimony "on [his] own individual personal review of all of the [autopsy] documents"—the autopsy report, x-rays, and photographs. During Dr. Milton's testimony, the state also offered the autopsy report itself, which was admitted over appellant's Confrontation Clause objection.

Appellant also objected to the admission of two of the autopsy photographs as prejudicial and cumulative under Texas Rule of Criminal Evidence 403. He then clarified "for the record" that he did not "have any objection to all the other ones that [the prosecution] offered." The trial court excluded one of the photographs and admitted the other.

## ANALYSIS

Appellant contends that the autopsy report, the autopsy photographs, and Dr. Milton's testimony all violated the Confrontation Clause by introducing Dr. Florez's testimonial statements without giving appellant an opportunity to cross-examine her. We conclude that the report is testimonial and that its admission violated the Confrontation Clause, as the State now concedes. Appellant failed to preserve his Confrontation Clause objection to the photographs, however. As to Dr. Milton's testimony, it consisted primarily of permissible independent conclusions, and his minor repetition of statements from the report was cumulative of the report itself. Thus, his repetition does not alter our analysis of whether the error in admitting the report was harmful. Because ample additional evidence established appellant's guilt and that evidence was mostly undisputed, we conclude the error was harmless beyond a reasonable doubt, and we affirm the trial court's judgment.

## I. Standard of review and applicable law

The Sixth Amendment's Confrontation Clause provides a simple yet unforgiving rule: the State may not introduce a testimonial hearsay statement

4

unless (1) the declarant is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the declarant. *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2713 (2011); *Wood v. State*, 299 S.W.3d 200, 207 (Tex. App.—Austin 2009, pet. ref'd); *Santacruz*, 237 S.W.3d at 827. While applying the rule is simple, determining when it applies can be more complicated.

The threshold inquiry is whether the hearsay at issue is "testimonial."[2] "Various formulations of th[e] core class of 'testimonial' statements exist . . . ." *Crawford v. Washington*, 541 U.S. 36, 51 (2004). The Court of Criminal Appeals has summarized three kinds of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent," i.e., "pretrial statements that declarants would expect to be used prosecutorially;" (2) "extrajudicial statements contained in formalized testimonial materials," such as affidavits, depositions, or prior testimony; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). Although evidentiary rulings are usually reviewed for an abuse of discretion, a statement's testimonial nature is a question of law that we review de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

## II. Admitting Dr. Florez's autopsy report violated the Confrontation Clause, but appellant failed to object to the autopsy photographs, and Dr. Milton's testimony did not aggravate the violation.

### A. Because Dr. Florez's report was testimonial, the trial court erred in admitting it.

Here, there is no contention that Dr. Florez was unavailable or that appellant

---

[2] Hearsay and Confrontation Clause objections are two separate issues. *Infante v. State*, 404 S.W.3d 656, 662 (Tex. App.—Houston [1st Dist.] 2012, no pet.). But appellant has not separately briefed whether Dr. Florez's report and the statements in it were also inadmissible as hearsay on purely evidentiary grounds, so we do not address that issue.

had an opportunity to cross-examine her. And neither party contends that her report was not hearsay. *See* Tex. R. Evid. 801. As a result, Dr. Florez's report and statements from it could only be admissible if they were not testimonial.

As the State correctly concedes on appeal, however, Dr. Florez's report falls within the core class of testimonial statements. At the least, the report was made under circumstances that "would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham*, 305 S.W.3d at 576.

"In Texas, a medical examiner is required by law to conduct an inquest when a person dies under circumstances warranting the suspicion that death was caused by unlawful means." *Wood*, 299 S.W.3d at 209 (citing Tex. Code Crim. Pro. Ann. art. 49.25, § 6(a)(4) (West 2006)). If the cause of death is determined beyond a reasonable doubt, the medical examiner must file a report stating the cause of death with the district, criminal district, or county attorney. *Id.* (citing Tex. Code Crim. Pro. Ann. art. 49.25, § 9(a) (West 2006)). Dr. Florez's report states that she conducted the autopsy pursuant to the statute prescribing these procedures. She also reported that an investigator from the Harris County Sheriff's Office attended the autopsy. While we need not decide whether autopsy reports will always be testimonial, we agree with the parties that, in this case, an objective medical examiner would reasonably believe that her report would be used in a later prosecution. Because Dr. Florez's report was testimonial, and there is no evidence or argument that the Confrontation Clause prerequisites to its admission were met, the trial court erred in admitting the report.

This conclusion is contrary to *Campos v. State*, 256 S.W.3d 757, 763–64 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd), in which this Court held that an autopsy report was non-testimonial because the report contained only "a sterile

6

recitation of facts" and "routine, descriptive" information. *Id.* Since *Campos*, the United States Supreme Court has twice held that forensic certificates reciting test results are testimonial. *Bullcoming*, 131 S. Ct. at 2715; *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009). In doing so, the Supreme Court explicitly rejected the analysis we applied in *Campos*, noting that such reports are testimonial notwithstanding that they are the "result of neutral, scientific testing." *Melendez-Diaz*, 557 U.S. at 317–21 (internal quotation marks and brackets omitted). Thus, we are no longer bound by the earlier panel decision in *Campos*. *See Chase Home Fin., L.L.C. v. Cal. W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Instead, we follow the teaching of the Supreme Court of the United States with respect to this issue. *See Ex Parte Luna*, 401 S.W.3d 329, 334 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("In deciding a federal constitutional issue, we are bound by U.S. Supreme Court decisions.").

The State introduced Dr. Florez's report during appellant's 2012 trial. This trial took place three years after *Melendez-Diaz v. Massachusetts*, in which the Supreme Court first held that introduction of certain forensic tests violates the Confrontation Clause. 557 U.S. at 310. The Supreme Court reiterated this conclusion in 2011 in *Bullcoming v. New Mexico*. Applying these holdings, Texas courts had concluded that admitting autopsy reports under circumstances not materially distinguishable from those in this case violates the Confrontation Clause. *E.g.*, *Martinez v. State*, 311 S.W.3d 104, 111 (Tex. App.—Amarillo 2010, pet. ref'd); *Wood*, 299 S.W.3d at 208; *see also Herrera v. State*, No. 07-09-00335-CR, 2011 WL 3802231, at *1–*3 (Tex. App.—Amarillo Aug. 26, 2011, no pet.) (mem. op., not designated for publication); *Gilstrap v. State*, No. 04-09-00609-CR, 2011 WL 192688, at *2–3 (Tex. App.—San Antonio Jan. 12, 2011, pet. ref'd)

7

(mem. op., not designated for publication).

The State introduced Dr. Florez's report without calling her as a witness not because she was unavailable, but because she was under felony indictment. Under the cases just discussed, the State's action violated appellant's constitutional right to confront the witnesses against him.

The State cannot avoid uncomfortable questioning of its witnesses by infringing upon constitutional protections. If the State wanted to introduce Dr. Florez's statements, the Constitution required it to call her as a witness precisely in order to give appellant the opportunity to impugn her credibility.[3] Because the State chose not to call Dr. Florez, the trial court erred in allowing it to introduce her autopsy report.

### B.     Appellant did not preserve a Confrontation Clause objection to the autopsy photographs at trial.

For the first time on appeal, appellant contends that Dr. Florez's autopsy photographs are non-verbal conduct intended by Dr. Florez as a substitute for verbal expression. The photographs are therefore testimonial hearsay, appellant maintains, and their admission violated the Confrontation Clause. *See* Tex. R. Evid. 801(a) (defining "statement" for hearsay purposes as including nonverbal conduct intended as a substitute for verbal expression). We conclude that appellant failed to raise this argument in the trial court and therefore did not preserve it for our review. *See Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) ("A reviewing court will not consider errors, even of constitutional magnitude, not called to the trial court's attention.").

Before Dr. Milton testified, appellant's trial counsel made the following

---

[3] Because the State did not call Dr. Florez as a witness, the trial court did not consider whether appellant could question her about her felony indictment, and if so to what extent. We therefore express no view on that issue.

8

objection:

> Judge, the defense is going to object to this medical -- assistant medical examiner *testifying*. He was not the medical examiner who performed the autopsy upon the complainant and we would object under the United States and Texas Constitution confrontation clause.

(Emphasis added). The trial court overruled the objection, but granted appellant's request for a running objection "to all of [Dr. Milton's] *testimony*." (Emphasis added).

In addition to Dr. Milton's testimony, the State introduced multiple exhibits related to Dr. Florez's autopsy. Perhaps because his initial objection only attacked Dr. Milton's testimony, appellant specifically objected to some of these exhibits. *See Martinez*, 311 S.W.3d at 111 (objection to witness testifying as to autopsy report "did not notify the trial court of any error in the admission of [autopsy] photographs").[4] For example, when the State offered Dr. Florez's autopsy report (discussed above), appellant objected. Appellant did the same when the State offered bullet fragments and a "copper [bullet] jacket" recovered from the complainant's body.

But with regard to the autopsy photographs, appellant not only failed to make a Confrontation Clause objection, he disavowed any such objection. After the State offered the photographs, appellant objected to two of them on other grounds. He argued that one photograph was substantially more prejudicial than probative and that the other was cumulative. *See* Tex. R. Crim. Evid. 403. The trial court sustained the latter objection and excluded the second photograph. Appellant's counsel then clarified, "[j]ust for the record, I don't have any objection

---

[4] We need not address whether appellant's running objection to "testimony" preserved an objection to exhibits admitted during that testimony because appellant disavowed any objection to the other photographs.

9

to all the other [photographs] that [the State] offered."

Appellant's counsel thus explicitly clarified "for the record" that he did not object to the admitted photographs. As a result, his argument on appeal that the photographs' admission violated the Confrontation Clause comes too late to be considered. *See Stewart v. State*, 995 S.W.2d 251, 255 (Tex. App.—Houston [14th Dist.] 1999, no pet.). In any event, even if appellant had preserved a Confrontation Clause objection to the photographs, that objection would fail because we have held that "[a]n autopsy photograph . . . is not a testimonial statement." *Herrera v. State*, 367 S.W.3d 762, 773 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

**C. Dr. Milton's testimony mainly consisted of permissible independent conclusions, and his repetition of statements from the autopsy report was minimal and cumulative.**

The parties dispute whether and to what extent Dr. Milton's testimony also revealed testimonial hearsay statements from Dr. Florez's report. They focus upon *Wood v. State*, which the Austin Court of Appeals decided in 2009. Since that case, the United States Supreme Court has decided *Bullcoming* and *Williams v. Illinois*, 132 S. Ct. 2221 (2012). Both of these cases—and *Williams* in particular—deal extensively with the question of surrogate expert testimony.

Perhaps the parties have avoided *Williams* because the case raises as many questions as it answers. In *Williams*, the result was endorsed by five votes, but the plurality's supporting analysis was rejected by five justices. *Id.* at 2265 (Kagan, J., dissenting). Our Court of Criminal Appeals has discussed the approaches in *Williams* but has not yet found it necessary to adopt one approach over another. *See Burch v. State*, 401 S.W.3d 634, 638–40 (Tex. 2013). Nor is it necessary for us to do so here.

Dr. Milton mostly testified to his own interpretation of the autopsy photographs admitted without objection. In *Williams*, at least eight justices saw no

10

Confrontation Clause problem with a testifying expert providing an independent evaluation of evidence that someone else collected. *See* 132 S. Ct. at 2235–36 (Alito, J., plurality); *id.* at 2270 (Kagan, J., dissenting) ("There was nothing wrong with [the expert] testifying that two DNA profiles—the one shown in the [lab] report and the one derived from [defendant's] blood—matched each other; that was a straightforward application of [the expert's] expertise."). Texas courts have agreed. *See Wood*, 299 S.W.3d at 213 (no Confrontation Clause problem even though testifying expert's opinions were based in part on his review of an autopsy report prepared by a non-testifying expert); *see also Hernandez v. State*, No. 05-11-01300-CR, 2013 WL 1282260, at *6 (Tex. App.—Dallas March 6, 2013, pet. ref'd) (mem. op., not designated for publication) (no Confrontation Clause violation where testifying expert provided an "independent judgment"); *Gilstrap*, 2011 WL 192688, at *2 (no Confrontation Clause problem with expert testifying to his "independent conclusions" and not statements contained in the autopsy report).

Dr. Milton did repeat certain inadmissible statements from Dr. Florez's report, though the repetition was minimal in the context of his testimony as a whole. For example, Dr. Milton testified about the clothing that accompanied complainant's body to the autopsy and provided the complainant's height and weight. Dr. Milton also testified that certain bullet fragments were recovered from certain places in the body. These statements do not appear to be conclusions based on an independent examination of the autopsy photographs and x-rays.

But the report itself was provided to the jury, which, standing alone, is a Confrontation Clause violation. *Wood*, 299 S.W.3d at 213. Dr. Milton's repetition of a few facts contained within the admitted report does not appreciably increase any harm caused by this violation. *See Bullcoming*, 131 S. Ct. at 2722 (Sotomayor, J., concurring) ("We would face a different question if asked to determine the constitutionality of allowing an expert witness to discuss others' testimonial

11

statements if the testimonial statements were not themselves admitted as evidence.").

Thus, for our purposes, it suffices to say that Dr. Milton's independent evaluation of evidence collected during the autopsy did not violate the Confrontation Clause, and that his repetition of statements from the report were cumulative of the improperly admitted report itself. We therefore turn to the question whether introducing the report harmed appellant at trial.

### III. The error in admitting Dr. Florez's report was harmless beyond a reasonable doubt.

A Confrontation Clause violation is constitutional error that requires reversal unless we conclude beyond a reasonable doubt that the error was harmless. *Davis v. State*, 203 S.W.3d 845, 849 (Tex. Crim. App. 2006); *see* Tex. R. App. P. 44.2(a). The critical inquiry is not whether the evidence supported the verdict absent the erroneously admitted evidence, but rather "the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations." *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). In making this determination, we may consider a number of non-exclusive factors, including: "(1) the importance of the hearsay statement's to the State's case; (2) whether the hearsay evidence was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the hearsay testimony on material points; and (4) the overall strength of the prosecution's case." *Davis*, 203 S.W.3d at 850. Applying the factors relevant to this error, we conclude it did not materially affect the jury's deliberations.

As an initial matter, though the jury was instructed on both capital murder and non-capital felony murder, it convicted appellant only of felony murder. A felony murder conviction requires proof that the defendant, "(1) while . . . in immediate flight from the commission or attempt [of a felony other than

12

manslaughter], (2) commits or attempts to commit an act clearly dangerous to human life, (3) which causes the death of an individual." *Loredo v. State*, 130 S.W.3d 275, 279 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (citing Tex. Penal Code § 19.02(b)(3)).

The jury charge also included two theories upon which appellant could be held responsible for a felony murder actually committed by one of his co-defendants. *See* Tex. Penal Code §7.02(a)(2), (b) (West 2012) (criminal responsibility for conduct of another). Thus, the jury could find appellant criminally responsible if he "intentionally solicit[ed], encourage[d], direct[ed], aid[ed], or attempt[ed] to aid" his cohorts in committing both the robbery and ensuing gunfight. Tex. Penal Code Ann. § 7.02(a)(2); *see also Nava v. State*, 379 S.W.3d 396, 416 (Tex. App.—Houston [14th Dist.] 2012, pet. granted). Alternatively, appellant would be responsible for one of the other robbers' felony murder if he was engaged in a conspiracy with them to commit the robbery and should have anticipated that a shooting might occur in furtherance of the robbery. Tex. Penal Code Ann. § 7.02(b); *Nava*, 379 S.W.3d at 405; *see also Flores v. State*, 681 S.W.2d 94, 96 (Tex. App.—Houston [14th Dist.] 1984), *aff'd*, 690 S.W.2d 281 (Tex. Crim. App. 1985) (shooting should have been anticipated where appellant knew co-conspirator had a gun). Under either theory, it is immaterial whether appellant himself pulled a trigger, let alone whether one of his bullets delivered a fatal wound. *Gutierrez v. State*, 681 S.W.2d 698, 703 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd) (citing *Curtis v. State*, 573 S.W.2d 219, 222 (Tex. Crim. App. 1978)).

Regardless of which of the co-defendants fired at and hit Mr. Rodriguez, there was ample evidence from non-autopsy sources that *one* of them committed felony murder. The only remaining question was whether the parties were criminally responsible for each other's actions, a question on which the contents of

13

the autopsy report could have no bearing. *See Rabbini v. State*, 847 S.W.2d 555, 559 (Tex. Crim. App. 1992) ("Although the State's evidence does not affirmatively show appellant fired one of the fatal shots, at the very least direct evidence established, beyond a reasonable doubt, his participation in this offense as a party.").

The autopsy report's relevance to the State's case was therefore in establishing that the complainant died of multiple gunshot wounds, which was not only undisputed but readily apparent even to a lay person. The State's key evidence—establishing that appellant participated in a robbery, that he and his co-robbers were each carrying firearms, and that a gun fight between some of the robbers and Mr. Rodriguez occurred while they were loading the stolen property into their getaway vehicle—was uncontroverted and independent from the autopsy. Thus, although the autopsy report might have added credence to Dr. Milton's testimony that wounds caused by appellant's rifle, standing alone, could have caused complainant's death, that determination was not important to appellant's liability as a party. The importance factor therefore weighs heavily against reversal.

Furthermore, to the extent that Dr. Florez's improperly admitted autopsy report may have strengthened the case against appellant as a principal, the report's relevant conclusions were cumulative of Dr. Milton's permissible testimony regarding his own independent conclusions from the autopsy record. Both doctors concluded that a gunshot wound fractured appellant's leg bone and caused surrounding tissue damage, and that the complainant died of multiple gunshot wounds. The jury's ability to read the autopsy report itself did not introduce conclusions about the cause of death different from those of Dr. Milton.

Finally, Dr. Milton's testimony regarding the critical element of appellant's liability as a principal—the attribution of a fatal wound to the weapon he was

carrying—did not stem from Dr. Florez's report. For example, Dr. Milton testified that small flecks of the kind appearing on the x-ray of the complainant's leg are indicative of a high-velocity bullet, usually a rifle bullet. Dr. Milton's further testimony concerning the potential fatality of wounds from high-velocity bullets that damage large blood vessels does not appear in Dr. Florez's report.

For these reasons, we conclude beyond a reasonable doubt that the introduction of Dr. Florez's report, and Dr. Milton's minimal repetition of statements from that report, did not materially affect the jury's deliberations. We therefore hold that the trial court's erroneous admission of this evidence was harmless, and we overrule appellant's sole issue.

## CONCLUSION

Having overruled appellant's sole issue, we affirm the trial court's judgment.


/s/    J. Brett Busby
        Justice

Panel consists of Justices Boyce, Jamison, and Busby.

Publish—Tex. R. App. P. 47.2(b).

15