**Affirmed and Opinion on Remand filed July 24, 2014.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-10-00266-CR

### JOVANY JAMPHER PAREDES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1241896**

## O P I N I O N   O N   R E M A N D

A jury found appellant, Jovany Jampher Paredes, guilty of capital murder and the trial court imposed the mandatory sentence of life in prison without the possibility of parole. *See* Tex. Penal Code Ann. §§ 12.31(a)(2), 19.03(a)(2) (West 2011). Appellant appealed his conviction and argued, among other things, that the trial court violated the Confrontation Clause by permitting a forensic scientist to testify regarding her DNA analysis, which relied on raw data generated by non-testifying analysts. This Court affirmed the conviction. *See Paredes v. State*, No.

14-10-00266-CR, 2011 WL 3667839 (Tex. App.—Houston [14th Dist.] Aug. 23, 2011, pet. granted) (mem. op., not designated for publication). The Court of Criminal Appeals granted appellant's petition for discretionary review, vacated this Court's judgment, and remanded the case to us to reconsider the Confrontation Clause issue in light of its decision in *Burch v. State*, 401 S.W.3d 634 (Tex. Crim. App. 2013). *See Paredes v. State*, No. PD-1420-11, 2013 WL 4507075, at *1 (Tex. Crim. App. Aug. 21, 2013) (per curiam, not designated for publication). On remand, this Court allowed the parties to file supplemental briefs. Having considered appellant's sole issue as framed by the Court of Criminal Appeals, we conclude that *Burch* does not support a holding that the scientist's testimony in this case violated the Confrontation Clause. Therefore, we affirm the trial court's judgment.

## BACKGROUND

Our prior opinion contains a detailed recitation of the facts of this case, so we include here only those facts necessary to resolve appellant's single issue on remand. *See Paredes*, 2011 WL 3667839, at *1–*5.

The State called forensic scientist Robin Freeman to testify regarding her analysis in appellant's case. Freeman testified that she worked as the forensic laboratory director for Identigene, the private laboratory that conducted some of the DNA analyses in appellant's case. Freeman explained that Identigene uses a batch process in which different analysts conduct different steps of the initial DNA testing using machines that generate raw DNA data. Freeman testified that in her role as the forensic laboratory director, she supervised this process and was qualified to perform each step in the process. Freeman further testified that Identigene has procedures and protocols in place for all work done by its analysts, and these procedures and protocols can detect some errors that may occur.

2

Freeman also explained that "when you have a problem in analysis, then what happens is you get no result as opposed to a wrong result."

Freeman then turned to the work done specifically in appellant's case. Freeman testified that three analysts performed the initial batch processing in appellant's case by extracting the DNA, amplifying it, and loading it on the capillary electrophoresis instrument. She testified that while she did not directly observe the three analysts performing their work, they provided all of the data and paperwork they generated to her. Freeman explained she reviewed everything the analysts did, compiled it, and then performed her own analysis to develop her opinions on the DNA evidence. In summary, Freeman opined that (1) the complainant's DNA matched the DNA found in a stain on a t-shirt that police had recovered from the closet of another member of the gang to which appellant belonged, and (2) scrapings taken from the collar of that same t-shirt yielded DNA from at least three contributors, with one being a major contributor. A DNA analyst from another lab testified that appellant's DNA matched the DNA of this major contributor, but appellant does not complain about that testimony on appeal.

Of note in this appeal, none of the three Identigene analysts testified during appellant's trial. In addition, none of the raw data generated by the three analysts was offered or admitted into evidence.[1] Finally, the record does not reveal whether Freeman prepared a report on her opinions; if she did, it was not admitted into evidence during appellant's trial.

---

[1] While no exhibits were offered or admitted into evidence during Freeman's testimony, Freeman did use a demonstrative Power Point exhibit. Appellant did not object to Freeman's use of the demonstrative exhibit.

ANALYSIS

Appellant argues his right to confront the witnesses against him under the Sixth Amendment of the United States Constitution was violated because Freeman based her opinion on raw DNA data produced by three non-testifying analysts working under her supervision. We rejected this argument on original submission of the case, stating "Freeman offered her expert opinion after she personally compiled the DNA data supplied by the non-testifying analysts, interpreted it, and performed the comparative analysis. An expert witness who offers her opinion based in part on lab work performed by another does not violate the Confrontation Clause." *Paredes*, 2011 WL 3667839, at *10. The Court of Criminal Appeals remanded the case to us to reconsider this decision "in light of *Burch*." *Paredes*, 2013 WL 4507075, at *1.

## I. Because the facts of *Burch* and the present case differ materially, *Burch* does not show that the Confrontation Clause was violated here.

In *Burch*, the State offered into evidence a one-page lab report stating that four Ziploc bags contained cocaine. *Burch*, 401 S.W.3d at 635. The lab report was signed by the testing analyst as well as the reviewing supervisor. The State called only the reviewing supervisor to testify. The supervisor testified that the testing analyst had performed all of the tests on the cocaine. *Id.* The supervisor also testified that the testing analyst no longer worked for the lab, but she did not offer any explanation for the testing analyst's departure. *Id.* The Court of Criminal Appeals held the surrogate expert testimony of the supervisor violated the Confrontation Clause because the supervisor lacked personal knowledge of the specific tests used and their execution. *Id.* at 640.

In reaching this conclusion, the Court of Criminal Appeals relied primarily on the United States Supreme Court's decision in *Bullcoming v. New Mexico*, 131

S.Ct. 2705 (2011). In *Bullcoming*, the prosecution did not call the analyst who tested the defendant's blood sample for alcohol because the analyst was on unpaid leave. *Id.* at 2709. Instead, the prosecution called another analyst to testify who was familiar with the laboratory's procedures. *Id.* The Supreme Court held that the lab report, which certified that the defendant's blood alcohol level was above the legal limit, was a testimonial statement of the analyst who performed the tests and therefore could not be offered into evidence through the testimony of a different or surrogate witness. *Id.* at 2710.

Because of notable differences between the facts of the present case and the facts of both *Burch* and *Bullcoming*, we conclude those cases do not support a result different from our original opinion. First, in the present case, Freeman testified that if there was a problem conducting the analysis of the DNA, there would be no result, not an erroneous one. This testimony directly addresses one of the primary concerns underlying both *Burch* and *Bullcoming*: incompetent or biased analysts. *See Adkins v. State*, 418 S.W.3d 856, 862 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding no Confrontation Clause violation occurred because the testifying analyst was able to discern the quality of the blood draw sample as part of conducting his analysis). In addition, there was no evidence in the present case that any of the three non-testifying analysts were no longer employed by Identigene, evidence considered significant in both *Burch* and *Bullcoming*. *See Bullcoming*, 131 S.Ct. at 2715–16 (pointing out credibility issues created by the placement of the testing analyst on unpaid leave); *Burch*, 401 S.W.3d at 635 (noting the testing analyst was no longer employed by the testing lab).

Second, unlike the prosecution in both *Burch* and *Bullcoming*, the State in this case did not introduce into evidence any hearsay documents containing data generated by the three non-testifying analysts. More specifically, the State did not introduce either (1) the amplified DNA molecules that the analysts prepared and inserted into the instrument, or (2) the raw data about those molecules that was generated by the instrument and provided to Freeman. This presents a question explicitly left unanswered in *Bullcoming*, as Justice Sotomayor noted. *See Bullcoming*, 131 S.Ct. at 2722 (Sotomayor, J., concurring) ("We would face a different question if asked to determine the constitutionality of allowing an expert witness to discuss others' testimonial statements if the testimonial statements were not themselves admitted into evidence."). *Burch* indicates that a testifying expert may rely on unadmitted data generated by a non-testifying analyst—the situation we are presented with here—without violating the Confrontation Clause. *See Burch*, 401 S.W.3d at 639; *Lee v. State*, 418 S.W.3d 892, 898–99 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

Finally and most significantly, unlike in *Burch* and *Bullcoming*, Freeman was not a surrogate witness serving as a mere conduit for another analyst's opinions. Instead, Freeman was the analyst who actually developed the opinions she testified to during appellant's trial. Freeman also had personal knowledge of the procedures and equipment used by Identigene. *See McWilliams v. State*, 367 S.W.3d 817, 820 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding defendant's confrontation rights were not violated because testifying expert had direct connection to scientific test at issue). In addition, Freeman testified at length and was cross-examined regarding how she developed her independent opinions regarding the DNA found in the t-shirt stain and collar scrapings. Therefore, we conclude *Burch* does not support a holding that admitting Freeman's testimony

6

violated the Confrontation Clause.

## II. Appellant's rights under the Confrontation Clause were not violated because the raw DNA data generated by the non-testifying analysts is non-testimonial.

*Burch*'s discussion of when statements are testimonial also lends support to our original conclusion that no Confrontation Clause violation occurred here. "The Sixth Amendment's Confrontation Clause provides a simple yet unforgiving rule: the State may not introduce a testimonial hearsay statement unless (1) the declarant is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the declarant." *Lee*, 418 S.W.3d at 895. In the present case, there is no contention that the three non-testifying analysts were unavailable or that appellant had an opportunity to cross-examine them. Appellant argues that a Confrontation Clause violation occurred because Freeman based her opinion on testimonial hearsay in the form of raw DNA data produced by the non-testifying analysts. To demonstrate such a violation, appellant must show—among other things—that the raw data was testimonial.

In *Burch*, the Court of Criminal Appeals stated "that the exact contours of what is testimonial continue to be defined by the courts." *Burch*, 401 S.W.3d at 636. It then quoted *Crawford v. Washington*, 541 U.S. 36, 52 (2004), for the proposition that testimonial statements are those "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id.* (quoting *Crawford*, 541 U.S. at 52). This principle has been applied to forensic reports that are both formal and have been created for the sole purpose of establishing or proving a fact highly relevant to a criminal prosecution. *Burch*, 401 S.W.3d at 636–37 (citing *Melendez-Diaz*, 557 U.S. 305, 311 (2009)).

*Burch* and *Bullcoming* stand for two related propositions. *Adkins*, 418 S.W.3d at 862. First, a forensic report is testimonial if it asserts a fact such as blood alcohol content or that a substance is a certain amount of cocaine. *Id.* Second, the analyst who determines that fact must be subject to cross-examination. *Id.*; *see Melendez-Diaz*, 557 U. S. at 310 (holding admission of analysts' affidavits certifying that substance possessed by the defendant was cocaine without accompanying testimony by the testing analyst violated the Confrontation Clause).

Because the raw DNA data generated by the non-testifying analysts does not meet the requirements of a testimonial statement discussed above, we hold it is non-testimonial. We reach this conclusion for two reasons. First, unlike in *Burch* and *Bullcoming*, the raw DNA data generated by the non-testifying analysts here is not found in a formal report and was not admitted into evidence during appellant's trial. It cannot be said that the "primary purpose" of this data, which in itself does not establish any relevant fact, was "creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 131 S. Ct. 1143, 1155 (2011). Nor does the raw data meet either of the testimonial requirements used by the plurality and Justice Thomas's concurrence in *Williams v. Illinois*, 132 S. Ct. 2221 (2012): it was not prepared "for the primary purpose of accusing" appellant (indeed, even Freeman's testimony did not accuse appellant); and it bore no "indicia of solemnity." *Id.* at 2243 (plurality op.), 2259 (Thomas, J., concurring in judgment); *see also id.* at 2244 (plurality op.) ("The technicians who prepare a DNA profile generally have no way of knowing whether it will turn out to be incriminating or exonerating—or both.").

Second, the raw DNA data was used by Freeman, one of the State's testifying expert witnesses, to develop her own opinions that the t-shirt contained the complainant's DNA as well as the DNA of a major contributor. It is Freeman's

opinions—not the raw DNA data generated by the non-testifying analysts—that asserted facts relevant to appellant's prosecution, and appellant was able to cross-examine her regarding those opinions. As noted in Part I above, both *Burch* and our decision in *Lee* indicate that a testifying expert may rely on unadmitted data to form an independent opinion without violating the Confrontation Clause.

Because it is not required that everyone whose testimony may be relevant to establishing the chain of custody, authenticity of the sample, or the accuracy of the testing device must appear in person as part of the prosecution's case, we conclude Freeman's testimony did not violate appellant's Sixth Amendment right to confront the witnesses against him. *Melendez-Diaz*, 557 U. S. at 311 n. 1; *see Adkins*, 418 S.W.3d at 862 (holding Confrontation Clause not violated even though nurse who drew defendant's blood did not testify because analyst who determined defendant's blood alcohol level did testify); *Infante v. State*, 404 S.W.3d 656, 667 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding admission of radio serial number obtained by non-testifying technician did not violate Confrontation Clause even though technician could have misread the serial number or machine technician used could have malfunctioned because these factors go to the evidence's weight rather than its admissibility); *see also Jamerson v. State*, Nos. 05-11-00362-CR, 05-11-00363-CR, 2014 WL 1009990, at *2 (Tex. App.—Dallas Feb. 14, 2014, no pet.) (mem. op., not designated for publication) (holding analyst who testified regarding her own independent interpretation of raw DNA data satisfied requirements of Confrontation Clause even though another, non-testifying analyst had actually conducted the testing that produced the raw data). Therefore, we overrule appellant's single issue on remand.

## CONCLUSION

Having overruled appellant's sole issue on remand, we affirm the judgment of the trial court.

/s/    J. Brett Busby
        Justice

Panel consists of Justices McCally, Busby, and Donovan.

Publish — Tex. R. App. P. 47.2(b).