ACCEPTED
12-15-00078-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
10/26/2015 12:00:00 AM
Pam Estes
CLERK

CAUSE NUMBER 12-15-00078-CR
IN THE
COURT OF APPEALS
TWELTH APPELLATE JUDICIAL DISTRICT OF TEXAS
AT TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
10/25/2015 10:16:00 AM
PAM ESTES
Clerk

APPEAL FROM THE 354TH JUDICIAL DISTRICT OF RAINS COUNTY, TEXAS

Trial Cause No. 5354

BRANDON PAUL COUCH
Appellant

V.

THE STATE OF TEXAS,
Appellee

BRIEF FOR APPELLANT

Martin Braddy
Attorney at Law
SBN 00796240
121 Oak Ave., Suite A
Sulphur Springs, Texas 75482
(903) 885-2040
(500) 885-2704 fax

1

## IDENTITY OF PARTIES

Pursuant to Texas Rule of Appellate Procedure 38(a), the following is a list of all parties to the trial court's judgment and the names and addresses of all trial and appellate counsel:

**APPELLANT:**
Brandon Paul Couch

Trial Counsel
Katherine Ferguson
2900 Lee Street, Suite 102
Greenville, TX 75403
(903) 454-6050
(903) 454-4898 Fax

Appellate Counsel
Martin Braddy
121 Oak Avenue, Suite A
Sulphur Springs, TX 75482
(903) 885-2040
(903) 500-2704 Fax

**APPELLEE:**
The State of Texas

Honorable Robert Vititow
County Attorney
220 W. Quitman St.
P.O. Box 1075
Emory, TX 75440
(903)473-5000 Ext. 115
(903)473-5085 Fax

**TRIAL COURT:**
354th Judicial District Court
Rains County, Texas

Judge E. Paul Banner
for Judge Richard Beacom
2507 Lee St.
Greenville, TX 75401
(903) 408-4194
(903) 408-4218 Fax

# TABLE OF CONTENTS

Table of Contents                                                            3

Index of Authorities                                                       4-5

Statement of the Case                                                        5

Issues Presented                                                             6

Statement of Facts                                                         6-8

Summary of Argument                                                        8-9

Argument                                                                     9

   I. Trial Court Improperly Admitted the Forensic Report and         9
      Accompanying Testimony

Conclusion and Prayer                                                       27

Certificate of Service                                                      28

Word Count Certificate                                                      28

## INDEX OF AUTHORITIES

**Cases**

Bullcoming v. New Mexico, —— U.S. ——, ——, 131 S.Ct. 2705, 2715, 180 L.Ed.2d 610 (2011) — 17

Burch v. State, 401 S.W.3d 634, 639 (Tex. Crim. App. 2013). — 18

Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) — 16, 17

De La Paz v. State, 273 S.W.3d 671, 680 (Tex.Crim.App.2008) — 16

Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) — 13

Langham v. State, 305 S.W.3d 568, 576 (Tex.Crim.App.2010) — 17, 21, 22, 23, 26

Lee v. State, 418 S.W.3d 892, 896 (Tex. App.—Houston [14th Dist.] 2013), *petition for discretionary review refused* (Mar. 12, 2014) — 17

Martinez v. State, 91 S.W.3d 331, 335-36 (Tex. Crim. App. 2002) — 12

Melendez–Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) — 18

Paredes v. State, 462 S.W.3d 510, 517-18 (Tex. Crim. App. 2015) — 18, 19

Saldano v. State, 70 S.W.3d 873, 887 (Tex.Crim.App. 2002) — 12

Sattiewhite v. State, 786 S.W.2d 271, 283–84 (Tex.Crim.App.1989). — 13

Snowden v. State, 353 S.W.2d 815, 822 (Tex.Crim.App. 2011), — 22, 23

<u>Thomas v. State</u>, 723 S.W.2d 696, 701 n. 10          13
(Tex.Crim.App.1986).

<u>Wall v. State</u>, 184 S.W.3d 730, 742 (Tex.Crim.App.2006)       17

<u>Wood v. State</u>, 299 S.W.3d 200, 208 (Tex. App.—Austin       16
2009, pet. ref'd)


**Statutes**

Tex. R. App. Proc. 33.1                                        11

Tex. R. App. Proc. 44.2                             21-22, 26

Tex. R. Evid. Rule 103                                      11

## <u>STATEMENT OF THE CASE</u>

Appellant was indicted in Cause Number 5354 for Murder. The case was transferred from the 8th District Court to the 354th District Court and the Honorable Judge Paul Banner was assigned to hear the case.

Appellant pled "Not Guilty" and proceeded to trial by jury with punishment to be set by the trial court. The jury found Appellant guilty and the trial court set the punishment at forty (40) years in the Institutional Division of the Texas Department of Criminal Justice and no fine. The trial court certified Appellant's right to appeal and Appellant timely filed a Notice of Appeal.

**ISSUE PRESENTED**

Did the trial court err in admitting the forensic firearm and toolmark analysis report prepared by James Jeffress and the accompanying testimony by Kevin Callahan?

**STATEMENT OF FACTS**

On November 14, 2012, the victim, Mattie Couch, was found shot to death in her home in Rains County, Texas. (R.R. Vol. 5 pg. 19). Appellant lived in a van behind the residence. (R.R. Vol. 6 pg. 66). There did not appear to be "forced entry," a struggle or any witnesses. (R.R. Vol. 5 pg. 144-45). She was found by her son, Gary Couch, who called 911. (R.R. Vol. 5 pg. 20). An autopsy revealed the cause of death to be multiple shotgun "wounds" and that the shotgun was fired "about three to five feet from her." (R.R. Vol. 5 pg. 42-5). The medical examiner could not determine whether there were multiple gunshots fired or a single gunshot. (R.R. Vol. 5 pg. 43). Blood was found throughout the crime scene, including on the refrigerator, walls, ceiling and recliner. (R.R. Vol. 5 pg. 150).

While a deputy was investigating the crime scene, Appellant came out of the woods near the residence walking towards the deputy holding a "long gun." (R.R. Vol. 5 pg. 89). The deputy ordered him to drop it and he turned and ran. (R.R.

Vol. 5 pg. 89). A search for Appellant ensued in the general area. (R.R. Vol. 5 pg. 136-7).

While helicopters searched for Appellant, he visited with Christopher Siscoe whose residence is approximately one mile from the victim's residence through the woods. (R.R. Vol. 5 pg. 194-5). Appellant had a gun while visiting with Mr. Siscoe. (R.R. Vol. 5 pg. 199). Appellant and Mr. Siscoe left the residence and walked through the woods. (R.R. Vol. 5 pg. 199). Mr. Siscoe testified that Appellant told him "…he felt like his grandma was sorry, before he pulled the trigger." (R.R. Vol. 5 pg. 199). Appellant also had contact with the mother of some friends, Deborah Simmons, at Clare Guin's house. (R.R. Vol. 5 pg. 189-90). He was holding a shotgun or rifle and appeared to Ms. Simmons to be anxious. (R.R. Vol. 5 pg. 190). She asked Appellant if he killed his grandmother and he said "no." (R.R. Vol. 5 pg. 190).

The State admitted a "Firearms/Toolmarks Laboratory Report" prepared by forensic scientist with the Texas Department of Public Safety Garland Crime Laboratory, James Jeffress. (State's Exhibit 34, R.R. Vol. 6 pg. 19-21). The report sets out Mr. Jeffress' opinions regarding the analysis of the shotgun, shot pellets, unfired shotshells, shot wad and clothing submitted for testing in this case. (State's Exhibit 34). Mr. Jeffress found that the shot pellets were consistent with #7 ½ lead shot matching one of the unfired shotshells found with Appellant at his

arrest. (State's Exhibit 34). He similarly found that the shot wad was consistent with shot wad loaded into Winchester brand 20 Guage shotshells matching the brand and guage of shotshells found with Appellant. (State's Exhibit 34). Also, Mr. Jeffress reported that the submitted shotgun was operational, though "malfunctions were detected during testing." (State's Exhibit 34). Finally, Mr. Jeffress opined that the "muzzle to garment distance … is unable to be determined due to the presence of an intervening object." (State's Exhibit 34).

The Appellant's clothing was tested for the presence of the victim's blood and the results were negative. (R.R. Vol. 5 pg. 147, R.R. Vol. 6 pg. 36). The shotgun and cleaning rod was tested for the victim's blood and the results were negative. (R.R. Vol. 5 pg. 146-47, R.R. Vol. 6 pg. 37). The blood found in the residence and tested was the victim's. (R.R. Vol. 6 pg. 39-40).

## SUMMARY OF ARGUMENT

The trial court improperly admitted the "Firearms/Toolmarks Laboratory Report" prepared by James Jeffress, a forensic scientist with the Texas Department of Public Safety Garland Crime Laboratory. The State called, as its sponsoring witness of the report, Kevin Callahan a forensic scientist with the same laboratory. Although his expert opinions were admitted through his report, Mr. Jeffress did not testify at trial or any other proceeding in the case. This resulted in a violation of

Appellant 6th Amendment constitutional right to confront and cross-examine the witnesses against him under Crawford.

## ARGUMENT

**I.    TRIAL COURT IMPROPERLY ADMITTED THE FIREARMS/TOOLMARKS REPORT AND ACCOMPANYING TESTIMONY**

The trial court improperly admitted State's Exhibit 34, the "Firearms/Toolmarks Laboratory Report" (herein after referred to as "the report") prepared by forensic scientist James Jeffress, and testimony regarding the report by Kevin Callahan. The State offered the report prepared by Mr. Jeffress through Mr. Callahan, another forensic scientist with the same laboratory. The State further asked Mr. Callahan to read portions of the report during his testimony. Mr. Jeffress did not testify at trial or at any other proceeding associated with this case. Mr. Callahan did not testify as to his own opinions or conclusions regarding the testing of the evidence. This resulted in a violation of Appellant's 6th Amendment constitutional right to confront and cross-examine the witnesses against him under Crawford.

**A. Preservation of Error**

The error in admitting the report and accompanying testimony of Mr. Callahan in violation of the Confrontation Clause was properly preserved for appellate review.

Rule 33.1 of the Texas Rules of Appellate Procedure and Rule 103 of the Texas Rules of Evidence require, to preserve error for appeal, a timely objection to the admission of the evidence and an adverse ruling by the trial court. Tex.R.App.Proc. 33.1, Tex.R.Crim.Evid. 103.

The Court of Criminal Appeals has established the principles behind these preservation of error rules.

"Both Texas Rule of Appellate Procedure 33.1 and Texas Rule of Evidence 103 are "judge-protecting" rules of error preservation. The basic principle of both rules is that of "party responsibility." Thus, the party complaining on appeal (whether it be the State or the defendant) about a trial court's admission, exclusion, or suppression of evidence "must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule [or statute] in question and its precise and proper application to the evidence in question."

Martinez v. State, 91 S.W.3d 331, 335-36 (Tex. Crim. App. 2002). The Court further explained:

10

"We have previously recognized two general policies for requiring specific objections. 'First, a specific objection is required to inform the trial judge of the basis of the objection and afford him the opportunity to rule on it. Second, a specific objection is required to afford opposing counsel an opportunity to remove the objection or supply other testimony.' Stated more broadly, objections promote the prevention and correction of errors. When valid objections are timely made and sustained, the parties may have a lawful trial. They, and the judicial system, are not burdened by appeal and retrial. When a party is excused from the requirement of objecting, the results are the opposite."

Martinez v. State, 91 S.W.3d at 335-36, *citing* Saldano v. State, 70 S.W.3d 873, 887 (Tex.Crim.App. 2002).

Further, with two exceptions, the law in Texas requires a party to continue to object each time inadmissible evidence is offered. Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). There are two exceptions to this "contemporaneous objection" rule.

**1. Running Objections**

The first exception to the "contemporaneous objection" rule is the running objection. As the Court of Criminal Appeals has held, this is "… a traditional method of preserving error that has survived the promulgation of the Rules of

11

Evidence." Ethington v. State, 819 S.W.2d at 858, *citing* Zimmerman v. State, 750 S.W.2d 194 (Tex.Crim.App.1988); Thomas v. State, 723 S.W.2d 696, 701 n. 10 (Tex.Crim.App.1986). The Court has indicated that a running objection is an acceptable and often preferred method of preserving objections to a "line of testimony from a witness." Ethington v. State, 819 S.W.2d at 858-59, *citing* Sattiewhite v. State, 786 S.W.2d 271, 283–84 (Tex.Crim.App.1989).

## 2. Objection to the report

The objection to the admission of the report properly preserved the Confrontation Clause violation for appellate review. Appellant's trial counsel made a timely specific objection to the admission of the report and the trial court overruled the objection and admitted the report.

Following the identification of the report, the State offered it for admission into evidence. (R.R. Vol. 6 pg. 20). Appellant's trial counsel made the following objection:

"Your Honor, I'm going to object on the basis of the report is hearsay. This gentleman did not prepare that report. He's merely the custodian of records. That is sufficient to authenticate the records. It does not get it past the hearsay statements. Plus, I would further object to a violation of the confrontation clause right for my client, in that the person who did that report is not here, is not present for me to cross examine about his testing,

12

his methodology, what he did, what he didn't do, how he did it. But, yet, they're trying to bring the conclusions in without that being subject to testing. So I object."

(R.R. Vol. 6 pg. 20-21). The trial court overruled the objection and admitted the report. (R.R. Vol. 6 pg. 21).

Therefore the error in admitting the report in violation of the Confrontation Clause is properly preserved for appeal.

### 3. Objection to reading the report

Following the admission of the report, the State asked Mr. Callahan to read portion of the report to the jury. (R.R. Vol. 6 pg. 23-24). Appellant's trial counsel objected to Mr. Callahan reading the report because it amounted to him "testifying about the examination." (R.R. Vol. 6 pg. 23). The trial court overruled the objection and allowed Mr. Callahan to read the report. (R.R. Vol. 6 pg. 23-24).

Although it seems obvious from the context of the proceedings, Appellant's trial counsel made sure that the trial court understood that she not only objected to the admission of the report and its opinions and conclusion, but also the reading of those opinions and conclusions from the report to the jury by Mr. Callahan. (R.R. Vol. 6 pg. 25-26).

Trial counsel asked to approach the bench and state "[j]ust for purposes of the record, I want a running objection to him reading from this report, because he

is putting conclusions of the report into evidence, which leaves me unable to cross examine how those conclusions were reached. It is a violation of my client's rights under the confrontation clause to confront and cross examine every witness who would testify against him. And putting this report in and letting him read from it is violating my client's rights under Crawford versus Washington." (R.R. Vol. 6 pg. 25-26). The trial court overruled trial counsel's running objection and allowed Mr. Callahan to read the report and its contents including Mr. Jeffress' opinions and conclusions. (R.R. Vol. 6 pg. 27).

These objections were sufficient to satisfy the preservation of error rules. Trial counsel continuously brought "to the judge's attention the evidence rule [or statute] in question and its precise and proper application to the evidence in question." She specifically referenced the Confrontation Clause rights and Crawford in particular in her running objection. Obviously, trial counsel's objection to the reading of the report was fully understood by the trial court and overruled. Therefore, the error in allowing Mr. Callahan to read the report to the jury was preserved for appellate review.

### B. Crawford Violation

The admission of the report and associated testimony violated Appellant's right to confrontation under Crawford. "In Crawford v. Washington, the Supreme Court held that the Sixth Amendment confrontation right applies not only to in-

court testimony, but also to out-of-court statements that are testimonial in nature. Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Confrontation Clause forbids the admission of testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. Id. at 68, 124 S.Ct. 1354.

### 1. Standard of Review

Whether a particular out-of-court statement is testimonial is a question of law. De La Paz v. State, 273 S.W.3d 671, 680 (Tex.Crim.App.2008). Wood v. State, 299 S.W.3d 200, 207 (Tex. App.—Austin 2009, pet. ref'd). Although evidentiary rulings are usually reviewed for an abuse of discretion, a statement's testimonial nature is a question of law that we review de novo. Wall v. State, 184 S.W.3d 730, 742 (Tex.Crim.App.2006). Lee v. State, 418 S.W.3d 892, 895-96 (Tex. App.—Houston [14th Dist.] 2013), *petition for discretionary review refused* (Mar. 12, 2014).

### 2. Testimonial

The report, prepared by the State's forensic scientist, and Mr. Callahan's reading of the report for the jury was testimonial in nature.

The threshold inquiry is whether the hearsay at issue is "testimonial. "Various formulations of th[e] core class of 'testimonial' statements exist...." Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177

(2004). The Court of Criminal Appeals has summarized three kinds of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent," i.e., "pretrial statements that declarants would expect to be used prosecutorially;" (2) "extrajudicial statements contained in formalized testimonial materials," such as affidavits, depositions, or prior testimony; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Langham v. State, 305 S.W.3d 568, 576 (Tex.Crim.App.2010).

The United States Supreme Court and the Court of Criminal Appeals have applied Crawford to forensic expert reports and testimony and found them to be testimonial. See Bullcoming v. New Mexico, —— U.S. ——, ——, 131 S.Ct. 2705, 2715, 180 L.Ed.2d 610 (2011); Melendez–Diaz v. Massachusetts, 557 U.S. 305, 311, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009); Burch v. State, 401 S.W.3d 634, 639 (Tex. Crim. App. 2013). However, those Courts have also found testimony of that nature to be non-testimonial. See Williams v. Illinois, —— U.S. ——, 132 S.Ct. 2221, 2229, 183 L.Ed.2d 89 (2012); Paredes v. State, 462 S.W.3d 510, 517-18 (Tex. Crim. App. 2015). This has led to some confusion regarding the issue.

Recently, in Paredes the Court of Criminal Appeals analyzed these holdings and established a framework for determining the testimonial nature of forensic

16

reports and testimony.  Regarding the admission of a non-testifying expert's report, the Court stated,

> "From these cases, several general principles are clear, assuming a defendant was afforded no prior opportunity to cross-examine.  The admission of a lab report created solely by a non-testifying analyst, without calling that analyst to sponsor it, violates the Confrontation Clause.  Doing so deprives a defendant of his opportunity to cross-examine the non-testifying expert about the conclusions contained in the report and how the non-testifying expert arrived at those conclusions. Additionally, testimony from an expert explaining that non-testifying analyst's report does not provide an adequate substitute for cross-examination even if the testifying expert is generally familiar with how the relevant analysis is customarily performed.  When the testifying expert has no personal knowledge of how the testing was conducted, a defendant still cannot adequately challenge through cross-examination the conclusion of that non-testifying analyst offered in that non-testifying analyst's report."

Paredes v. State, 462 S.W.3d 510, 517-18 (Tex. Crim. App. 2015).  The Court went on to clarify the admissibility of testimony based on opinions and conclusions of non-testifying experts.  The Court held,

"For an expert's testimony based upon forensic analysis performed solely by a non-testifying analyst to be admissible, the testifying expert must testify about his or her own opinions and conclusions. While the testifying expert can rely upon information from a non-testifying analyst, the testifying expert cannot act as a surrogate to introduce that information. "

Paredes v. State, 462 S.W.3d 510, 517-18 (Tex. Crim. App. 2015).

Therefore, admitting a forensic report of a non-testifying expert violates the Confrontation Clause under Crawford. Further, admitting the testimony of a testifying expert that provides the opinions and conclusions of a non-testifying expert likewise violates the Confrontation Clause under Crawford.

**3. Analysis**

The admission of the report and the testimony of Mr. Callahan regarding the report violates the Confrontation Clause in both ways proscribed by the Paredes Court.

Here, law enforcement submitted the firearm, shot pellets, shotshells and shot wad seized as evidence to the Texas Department of Public Safety Crime Lab for forensic testing. (R.R. Vol. 5 pg. 46-49, 131-36). The report articulates the findings of that forensic testing conducted by Mr. Jeffress. (State's Exhibit 34). Mr. Jeffress did not testify at trial or at any other proceeding in this case.

18

The State called as its sponsoring witness of the report Mr. Callahan, another firearms examiner with the same lab. (R.R. Vol. 6 pg. 6-7). Mr. Callahan identified himself as the "verifier" of the case. (R.R. Vol. 6 pg. 7, 9). He testified, outside the presence of the jury, that "in this instance what was verified was that the size of the shots is consistent with seven and half shot and that's based on the weight of the pellets and their diameter." (R.R. Vol. 6 pg. 18-19). He did not discuss the procedures or processes employed by the lab in conducting these forensic testing. Nor did he testify to having been involved in or observing the testing in this case.

The State decided to offer the report only, without eliciting testimony from Mr. Callahan regarding his own opinions or conclusions or verifications. (R.R. Vol. 6 pg. 19-22). The State followed-up the admission of the report by asking Mr. Callahan to read portions of the report for the jury without further explanation. (R.R. Vol. 6 pg. 24-29).

**4.    Conclusion**

The evidence admitted through the report and accompanying testimony was "testimonial" as proscribed by Paredes. The trial court allowed the State to admit the opinions and conclusions of Mr. Jeffress through the report without affording Appellant the opportunity to confront and cross-examine him regarding those opinions and conclusions. Likewise, the trial court admitted Mr. Jeffress' opinions

19

and conclusions through Mr. Callahan's testimony without providing Appellant the opportunity to confront and cross-examine Mr. Jeffress regarding his opinions and conclusions.

Therefore, the trial court erred in admitting the report and the accompanying testimony in violation of Appellant's Confrontation Clause rights pursuant to Crawford.

**C. Harm**

In our case, the violation of Appellant's Confrontation Clause rights pursuant to Crawford is harmful error.

A Confrontation Clause violation is constitutional error subject to a harm analysis under Texas Rule of Appellate Procedure 44.2 (a). Langham v. State, 305 S.W.3d 568, 582 (Tex.Crim.App.2010). Texas Rule of Appellate Procedure 44.2 states, "[i]f the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. Proc. 44.2.

The Court of Criminal Appeals has held, "…, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate

determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" Snowden v. State, 353 S.W.2d 815, 822 (Tex.Crim.App. 2011), *citing* Tex.R.App. P. 44.2(a). Therefore, the Court should reverse this case unless it believes beyond a reasonable doubt that the error in admitting the report did not contribute to the conviction or punishment.

In determining whether constitutional error under Crawford may be declared harmless beyond a reasonable doubt, the following factors are relevant: (1) how important the out-of-court statement was to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the prosecution's case. Langham v. State, 305 S.W.3d at 582.

The question is not whether the verdict was supported by evidence. Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at their decision, that is, whether the error adversely affected the integrity of the process leading to the decision. Langham v. State, 305 S.W.3d at 582. Furthermore, the Court should consider other constitutional harm factors, such as the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, probable collateral implications, the weight a juror would probably place on the

error, and whether declaring the error harmless would encourage the State to repeat it with impunity. <u>Snowden v. State</u>, 353 S.W.2d 815, 820 (Tex.Crim.App.2011).

**1. Analysis**

a. Nature of the error and weight of the evidence

First, the nature of the evidence wrongfully admitted probably carried great weight with the jury. The evidence was in the form of scientific analysis and conclusions conducted by the Texas Department of Public Safety Crime Laboratory by an individual with the title "Forensic Scientist." (State's Exhibit 34). The scientific nature of the report, the title of the person responsible for it, and the power of Texas' highest law enforcement agency all lend an air of credibility and reliability.

Further, the nature of the error was the denial of cross-examination. Appellant was completely deprived of the ability to cross-examine Mr. Jeffress, and thus the report stood on its own without meaningful challenge. Appellant could not challenge the science or procedures behind the testing, the qualifications of Mr. Jeffress, or the prestige of the Texas Department of Public Safety Laboratory. Consequently, it is unlikely that the jury questioned its findings. Also, it is probable that the jurors place significant weight upon it in considering Appellant's guilt.

b. Emphasis by the State

22

Obviously, the prosecutor believed the report and its findings were important and greatly emphasized its role in the State's case. The prosecutor's opening statement included the following:

"She was shot with a 20 gauge shotgun." (R.R. Vol. 5 pg. 13). "I believe the evidence will show that there were pellets and wadding removed from her body. And the pellets and wadding are consistent with those from a 20 gauge Winchester shell." (R.R. Vol. 5 pg. 14). "The evidence will show the defendant gets caught with a 20 gauge shotgun. In the chamber of the 20 gauge shotgun is a Winchester 20 gauge, unspent shell." (R.R. Vol. 5 pg. 14). "The pellets and wadding in the Winchester unspent shell or that shell itself are consistent with those that were found in Mattie Couch. Winchester 20 gauge, seven and a half shot." (R.R. Vol. 5 pg. 14).

Based on the prosecutor's opening statement, not only did he believe the opinions and conclusions were important to the case, but he specifically asked the jury to consider them in finding Appellant guilty. (R.R. Vol. 5 pg. 16).

Furthermore, the prosecutor's closing argument emphasized the report and its findings as well. The prosecutor made the following arguments:

"It's easy. He's caught with a .20 gauge shotgun, with a .20 gauge shell in it. He's got .20 gauge shells on him. She's shot, not with a slug or something." (R.R. Vol. 6 pg. 128). "That's the gun he was caught with.

23

That's the gun that killed her." (R.R. Vol. 6 pg. 128). "He's caught and yes, there's a million, billion, how many ever shells a Winchester – but isn't it awful coincidental, it's more than a coincidence, she's shot and you do have the lab report here which ties it all together. She's shot seven and half shot pellets that come out of her. Seven and a half shot pellets in a gun. It's a Winchester brand wadding. Winchester shell in the gun." (R.R. Vol. 6 pg. 131-132). "Take the lab reports back there that shows it's the same type of gun." (R.R. Vol. 6 pg. 134).

The prosecutor not only specifically encourages the jury to take the report with them to consider during deliberations, but also describes the report as the evidence "which ties it all together." (R.R. Vol. 6 pg. 132, 134). It is likely that the jury followed the prosecutor's encouragement and considered the report and its findings in determining guilt.

c. The State's case

The question is not whether the State's case was strong or weak, or whether the verdict is supported by the evidence. Langham v. State, 305 S.W.3d at 582. Instead, the question is whether the Court believes beyond a reasonable doubt that the evidence did not contribute to the finding of guilt. Tex. R. App. Proc. 44.2. In other words, was the State's case so strong and the evidence so inconsequential that the reviewing court believes beyond a reasonable doubt that the evidence was

24

not "a contributing factor in the jury's deliberations in arriving at their decision?" Langham v. State, 305 S.W.3d at 582.

Here, the report and its findings played a pivotal role in the State's case and likely had a powerful impact on the jury. The State's case against Appellant was circumstantial based on an inculpatory statement made to a somewhat questionable individual, inculpatory behavior by Appellant shortly after the offense, Appellant's ability to enter the residence without force, a previous incident of violence by Appellant towards Ms. Couch and the matching of the shotgun and shotshell found with Appellant upon arrest and the shotgun and type of shell used to kill Ms. Couch. The State's case lacked several things that would have strengthen it, including:

1. Eye-witness testimony placing Appellant at the crime scene;

2. Blood on Appellant or his clothing, considering that blood spatter was found throughout the crime scene;

3. Blood on the firearm found at Appellant's arrest;

4. DNA or other physical evidence placing Appellant at the crime scene;

5. An obvious motive to kill Ms. Couch in the manner in which she was killed;

6. A confession or other inculpatory statements to law enforcement personnel.

25

(R.R. Vol. 5 pg. 146-47, 150), (R.R. Vol. 6 pg. 36-37).

In light of the lack of this type of evidence, the significance of the report and its findings increases. Accordingly, the prosecutor dedicated an entire witness' testimony to the report and its findings and fought hard for admission over valid objections by Appellant. (R.R. Vol. 6 pg. 6-31). The prosecutor even describes the report, during his closing argument, as the evidence that "ties it all together." (R.R. Vol. 6 pg. 132). Obviously, the report and its findings were not inconsequential "throw away" pieces of evidence that the jury likely did not consider during deliberations.

Furthermore, in considering this murder case without the benefit of the previously listed potential evidence, the power of the report and its findings is undeniable. The medical examiner describes removing the shot pellets and wadding from Ms. Couch's body. (R.R. Vol. 5 pg. 40-42). Pictures and x-rays were admitted to further illustrate the pellets and wadding. (State's Exhibit 9, 4, 6, 7, 8). This testimony accompanied by vivid visuals impressed upon the jury's mind an indelible image, that of Ms. Couch's lifeless body riddled with shot pellets and wadding. The report and its findings then matched those pellets and wadding to the very type of firearm and shotshells found with Appellant upon arrest shortly after Ms. Couch was found. (State's Exhibit 34). The report creates a direct link from those horrible pellets taken from Ms. Couch's body to the firearm in the

possession of Appellant. That link is important evidence coupled with powerful images. The type evidence and images that any reasonable juror would surely consider.

Considering the nature of the evidence and error, the likely weight placed on the evidence by the jury, the emphasis placed on the evidence by the prosecutor, the significance of the evidence to the State's case and the powerful nature of the evidence, it would be inconceivable for the jury to have not considered the report and its findings in determining Appellant's guilt. As a result, this Court should find that the constitutional error in admitting the report and its findings was harmful.

**D. Conclusion**

Therefore, this Court should find that the trial court erred in admitting the report and the accompanying testimony and that the error was harmful. Consequently, this Court should reverse the judgement of conviction and order a new trial.

<u>**CONCLUSION AND PRAYER**</u>

It is for the reasons contained herein that Appellant would respectfully pray that this Court of Appeals for the Twelfth District reverse the judgment of sentence of the Appellant and remand the case to the 354th Judicial District for retrial of the case.

Respectfully submitted,


/s/ Martin Braddy
Martin Braddy
Attorney for Appellant
SBN 00796240
121 Oak Ave., Suite A
Sulphur Springs, Texas 75482
(903) 885-2040
(903) 500-2704 fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was forwarded to the Rains County Attorney, Robert Vititow, on this the 25th day of October, 2015.

/s/ Martin Braddy
Martin E. Braddy

## WORD COUNT CERTIFICATION

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 4,684 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Martin Braddy
Martin E. Braddy